UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SCHAFFER FAMILY INVESTORS,          CIVIL ACTION NO. 6:15-cv-00647
LLC, ET L.

VERSUS                              JUDGE DOHERTY

THE ESTATE OF KRIS MELANCON,        MAGISTRATE JUDGE HANNA
ET AL.


## REPORT  AND  RECOMMENDATION


Pending before this Court is the defendants' motion to dismiss the plaintiffs'

complaint under Fed. R. Civ. P. 12(b)(6) and 12(b)(7).  (Rec. Doc. 14).  The motion

is opposed.  The motion was referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. § 636 and the

standing orders of this Court.  For the following reasons, it is recommended that the

motion should be GRANTED IN PART and DENIED IN PART, and the plaintiffs

should be ordered to amend their complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

Between 2008 and 2012, the plaintiffs in this lawsuit, Robert Schaffer and

Schaffer Family Investors, LLC, allegedly entered into a series of transactions by

which they purchased oil and gas royalty and leasehold interests in properties located

in Louisiana and other states (hereinafter referred to as "the OGM Royalty Interests.")

The total amount paid by the plaintiffs for those interests was approximately $8 million. In their petition, the plaintiffs allege that they were represented by their agent, Lee Sonnier, in making these transactions. They allege that Sonnier was also the agent of and involved in a joint venture with the defendants, Kris Melancon,[1] Pinnacle Oil & Gas, LLC, Lemel Petroleum, LLC, and ten unidentified persons referred to in the petition as John Doe Nos 1-10. The plaintiffs allege that the defendants fraudulently induced them to enter into the transactions, that what they actually purchased was materially different from what they agreed to purchase, and that part of the money they paid to purchase the OGM Royalty was funneled to Sonnier or retained by the defendants in derogation of the plaintiffs' agreement.

In August 2013, the plaintiffs filed a complaint in federal court in California against Sonnier and the other defendants in this lawsuit. The parties in that suit allegedly entered into a tolling agreement, effective January 15, 2014, by which all claims were tolled for one year. All of the claims asserted in the California suit, except for those asserted against Sonnier, were dismissed in February 2014. (Rec. Doc. 1-1 at 18). Then, on January 14, 2015, the plaintiffs filed this lawsuit in the 16th Judicial District Court, St. Martin Parish, Louisiana, asserting virtually identical

---

[1] According to the plaintiffs, defendant Kris Melancon committed suicide in November 2013. (Rec. Doc. 22-1 at 7). His succession representative was identified in the petition.

claims against the parties who had previously been dismissed from the California litigation and omitting any claims against Sonnier.  The defendants timely removed the action to this court on the basis of federal question jurisdiction, contending that the defendants violated two federal securities laws, then filed the instant motion to dismiss.

**ANALYSIS**

## I.   SCOPE OF THIS REPORT AND RECOMMENDATION

This Court's subject-matter jurisdiction is based on there being a federal question presented in the plaintiff's petition, and the removing defendants did not argue that subject-matter jurisdiction might alternatively be based upon the diversity of the parties' citizenship.  If any of the defendants is a Louisiana citizen, which is likely in this case but has not yet been established, this Court's subject-matter jurisdiction cannot be based on the parties' diversity of the citizenship.[2]  Should it be determined that the plaintiffs' federal-law claims should be dismissed, there will be no federal question remaining before the court.  Although this fact alone does not divest the court of jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will

---

[2]      28 U.S.C. § 1441(b).

point toward declining to exercise jurisdiction over the remaining state-law claims."[3]

Moreover, the general rule in this circuit is to dismiss state-law claims when the federal claims they supplement are dismissed.[4]  Therefore, if the plaintiffs have not stated valid federal-law claims, the undersigned will recommend that this Court decline to exercise its supplemental jurisdiction and further recommend that the plaintiffs' state-law claims be dismissed.  Accordingly, in this report and recommendation, the undersigned will analyze whether a valid claim has been asserted under federal law and will pretermit discussion of the plaintiffs' state-law claims at this time.  The undersigned will also pretermit discussion of the timeliness of the federal-law claims at this time.

## II.   THE RULE 12(B)(6) MOTION TO DISMISS

### A.   THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[5]  When considering a

---

[3]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)

[4]    *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

[5]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

-4-

motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto.[6]  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[7]  However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[8] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[9]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[10]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[11] and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a

---

[6]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[7]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[8]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[9]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[10]    *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[11]    *Bell Atlantic v. Twombly,* 127 U.S. at 555.

suspicion [of] a legally cognizable right of action."[12]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[14]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter

---

[12]     *Bell Atlantic v. Twombly,* 127 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[13]     *Bell Atlantic v. Twombly*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[14]     *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[15]     *Ashcroft v. Iqbal*, 556 U.S. at 678.

[16]     *Ashcroft v. Iqbal*, 556 U.S. at 679.

(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[17]

## B. THE PLAINTIFFS' CLAIM UNDER THE SECURITIES EXCHANGE ACT OF 1933

The plaintiffs' first claim is that the defendants violated the federal Securities Exchange Act of 1933, specifically 15 U.S.C. §§ 77e(a) and 77l(a), by failing to register the OGM Royalty Interests sold to the plaintiffs as investment securities, rendering the sale of the OGM Royalty Interests unlawful.  It is undisputed that a "fractional undivided interest in oil, gas, or other mineral rights" is a security, as that term is defined in the federal securities laws,[18] and that such interests were allegedly purchased by the plaintiffs from defendants Pinnacle Oil & Gas, LLC and Lemel Petroleum, LLC.[19]  The defendants argue, however, that the registration requirement did not apply to the securities purchased by the plaintiffs.  In support of that argument the defendants cite 15 U.S.C. § 77d, which reads as follows:  "The provisions of section 77e of this title shall not apply to –. . . transactions. . . not involving any

---

[17]     *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.  See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

[18]     15 U.S.C. § 77b.

[19]     Although the plaintiffs state that "[t]his lawsuit arises out of Defendants' sale to Plaintiffs of oil gas, and mineral royalty and leasehold interests," (Rec. Doc. 1-1 at 2, ¶ 10), the exhibits attached to the plaintiffs' petition list only Pinnacle and Lemel as the sellers of the interests allegedly purchased by the plaintiffs.  (Rec. Doc. 1-1 at 40-48).

public offering."  There is no public offering if there are no more than, or the issuer reasonably believes that there are no more than, thirty-five purchasers of securities from the issuer.[20]  The Fifth Circuit has held that a plaintiff failed to state a claim under the 1933 Act when the transaction at issue was a private one.[21]  In this case, the plaintiffs have not alleged that any of the OGM Royalty Interests were offered to or purchased by thirty-five or more potential purchasers.

According to the plaintiffs, however, the defendants' argument that the OGM Royalty Interests are exempt from the registration requirement is an affirmative defense that cannot be considered at this time.  While the plaintiffs are correct that defenses generally are not a proper subject for a Rule 12(b)(6) motion, an affirmative defense may be asserted in such a motion if the facts supporting the defense appear on the face of the complaint.[22]  In other words, a complaint is "subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy."[23]

---

[20]      17 C.F.R. § 230.506(b)(2)(i).

[21]      *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

[22]      *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006); *Songbyrd, Inc. v. Bearsville Records, Inc*., 104 F.3d 773, 776, n. 3 (5th Cir. 1997); *Clark v. Amoco Prod. Co*., 794 F.2d 967, 970 (5th Cir. 1986).

[23]      *Moran v. Ocwen Loan Servicing, L.L.C*., 560 F. App'x 277, 280, n. 1 (5th Cir. 2014), quoting  5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. 2013).

In this case, the plaintiffs allege that "Schaffer purchased each OGM Royalty Interest by accepting written offers presented to him by . . . Sonnier" (Rec. Doc. 1-1 at 3) and that "SFI purchased each OGM Royalty Interests [sic] by accepting written offers presented to it by Sonnier" (Rec. Doc. 1-1 at 7).  There is no allegation that the same or any similar offer was made to any other potential purchaser.  Furthermore, the plaintiffs allege that the deal offered to them, with regard to each and every OGM Royalty Interest that they purchased, was structured so that if the offer was accepted by the plaintiffs, then the OGM Royalty Interest would be owned in full by the plaintiffs, Mr. Sonnier (and/or his immediate family members), and defendant Kris Melancon (and/or his related entities or family members).  (Rec. Doc. 1-1 at 4, 8).  This allegation eliminates the possibility that any other investors would have been afforded an opportunity to purchase any part of any OGM Royalty Interest at issue in this lawsuit.

However, motions to dismiss are viewed with disfavor and are rarely granted,[24] and a court should "freely give leave [to amend a complaint] when justice so requires."[25]  Accordingly, it is recommended that the plaintiffs be offered an opportunity to amend their complaint to allege the number of potential purchasers to

---

[24]    *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[25]    Fed. R. Civ. P. 15(a)(2).

whom each OGM Royalty Interest was offered in addition to the plaintiffs.  If that number is less than thirty-five, it is recommended that the plaintiffs' first claim for relief, which alleges a violation of the Securities Exchange Act of 1933, be dismissed for failure to state a claim upon which relief can be granted by this Court.

### C.   THE SECURITIES EXCHANGE ACT OF 1934 CLAIM

The plaintiffs' second claim is that the defendants violated the Securities Exchange Act of 1934 and, more particularly, Securities & Exchange Commission Rule 10b-5, which is codified at 17 C.F.R. § 240.10b-5(a).  That rule makes it unlawful, in connection with the purchase or sale of any security, for any person to use the mail or any other "means or instrumentality of interstate commerce . . . [t]o employ any device, scheme, or artifice to defraud" or to "make any untrue statement of a material fact or to omit to state a material fact."  The plaintiffs allege that the defendants made both misrepresentations and omissions of material fact with regard to the sale of the OGM Royalty Interests to the plaintiffs.

To state a claim under Rule 10b–5, however, a plaintiff must allege, in connection with the purchase or sale of securities:  (1) a misstatement or an omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff relied, and (5)

that proximately injured the plaintiff.[26]  Securities fraud claims brought by private litigants are also subject to the pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA").[27]  The PSLRA "was enacted in response to an increase in securities fraud lawsuits perceived as frivolous."[28]  The PSLRA requires a plaintiff to identify each allegedly misleading statement with particularity and explain why it is misleading.[29]  The Fifth Circuit has held that the PSLRA's pleading requirement "incorporates, at a minimum, the pleading standard for fraud actions under Federal Rule of Civil Procedure 9(b)."[30]  To satisfy Rule 9(b), a plaintiff must specify each allegedly fraudulent statement, the speaker, when and where the statement was made, and why the statement was false or misleading.[31]  Read together, Rule 9(b) and the PSLRA direct the pleader to (1) specify each

---

[26]    *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir.  2007); *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

[27]    *Owens v. Jastrow*, 789 F.3d 529, ___ (5th Cir. 2015); *Pipefitters Local No. 636 Defined Ben. Plan v. Zale Corp.*, 499 F. App'x 345, 349 (5th Cir. 2012).

[28]    *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003).

[29]    *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); 15 U.S.C. § 78u–4(b)(1).

[30]    *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003); *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349–50 (5th Cir. 2002).

[31]    *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006); *Plotkin v. IP Axess Inc.*, 407 F.3d at 696.

statement alleged to have been misleading, i.e., contended to be fraudulent; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent.[32] The Fifth Circuit has referred to this as the "who, what, when, where, and how" requirements.[33]   Additionally, for allegations made on information and belief, the plaintiff must allege with particularity "all facts on which that belief is formed, i.e., set forth a factual basis for such belief."[34]   A district court must dismiss a complaint that does not meet these requirements.[35]

The plaintiffs allege that they were fraudulently induced to enter into the transactions by which they acquired the OGM Royalty Interests.  Many of the plaintiffs' factual allegations point out Sonnier's alleged misrepresentations and omissions.  For example, the plaintiffs allege that "Sonnier further induced Schaffer to purchase OGM Royalty Interest" (Rec. Doc. 1-1 at 4, ¶ 15); that Sonnier

---

[32]     *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d at 350.

[33]     *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336 at 350.

[34]     15 U.S.C.A. § 78u-4(b)(1)(B).

[35]     15 U.S.C. § 78u–4(b)(3)(A).

communicated the purchase price to be paid for the purchase of the OGM Royalty Interests and the other relevant terms of the deal (Rec. Doc. 1-1 at 4, ¶ 18); that Sonnier made false allegations concerning the financial benefit he was to receive as a result of Schaffer's purchases (Rec. Doc. 1-1 at 6, ¶ 22); and that Schaffer and SFI entered into oral agency agreements with Sonnier based on representations made by Sonnier (Rec. Doc. 1-1 at 4, ¶ 17; Rec. Doc. 1-1 at 7, ¶ 25).  But Sonnier is not a defendant in this lawsuit.  Moreover, the plaintiffs expressly allege that "Defendants ***and*** their agent Sonnier made false representations to Plaintiffs concerning their purchase of the OGM Royalty Interests."  (Rec. Doc. 1-1 at 12, ¶ 40) (emphasis added).  The plaintiffs do not detail the statements allegedly made by each separate defendant; instead, many of the plaintiffs' factual allegations are attributed to "the defendants" generally, without specifying which individual defendant or group of defendants was acting at that particular point.  For example, the plaintiffs allege that "Schaffer relied upon Defendants' representations" (Rec. Doc. 1-1 at 6) and that SFI purchased the OGM Royalty Interests "[a]s a result of Defendants' representations" (Rec. Doc. 1-1 at 9).  This type of generalized pleading does not comport with the requirements of Rule 9(b) or those of the PSLRA.

The plaintiffs initially allege that "Defendants induced Plaintiffs to make purchases of the OGM Royalty Interests by misrepresentations made to Plaintiffs

through (i) e-mails sent directly to SFI, (ii) e-mails sent to Defendants' agent, Sonnier, with the understanding and intent that those e-mails, or the information contained therein, be forward to Plaintiffs, and (iii) on information and belief, information provided to Defendants' agent, Sonnier, in telephone calls, with the understanding and intent that such information be provided to Plaintiffs." (Rec. Doc. 1-1 at 2-3). This allegation is insufficient because it does not identify any person who made the alleged misrepresentations, the date on which the alleged e-mails and telephone calls were made, the location where the speaker or writer was at the time the e-mails were sent and telephone calls were made, or the specific content of the e-mails and telephone calls.

The plaintiffs then set forth more specific allegations concerning three sets of transactions:  (a) purchases of OGM Royalty Interests by Schaffer; (b) purchases of OGM Royalty Interests by SFI; and (c) purchases by Schaffer of OGM Royalty Interests referred to as "the Flip Properties."  But these allegations also fall short of the pleading requirements.

The plaintiffs' allegations concerning Schaffer's purchases fail to comply with the pleading requirements of Rule 9(b) and the PSLRA.  Although the plaintiffs allege that "Schaffer relied upon Defendants' representations" (Rec. Doc. 1-1 at 6, ¶ 21) in deciding whether the purchase the OGM Royalty Interests, there is not a single

allegation attributing a misrepresentation or omission to any particular person other than Sonnier.  Furthermore, the plaintiffs allege that the terms of the deal, including the purchase price to be paid by Schaffer and the percentages in which the interests would be divided between Schaffer, Sonnier, and Melancon, were communicated to Schaffer by Sonnier.  (Rec. Doc. 1-1 at 4-5, ¶ 18).  The plaintiffs allege that Sonnier forwarded e-mails from Melancon to Schaffer but they also allege that the forwarded e-mails were first altered to falsely represent the price.  (Rec. Doc. 1-1 at 5, ¶ 19).  The only inference to be drawn from this is that Sonnier altered Melancon's e-mails before forwarding them on to Schaffer.  Thus, any misrepresentations made via e-mail were made by Sonnier and not by Melancon or any other defendant in this lawsuit.

With regard to the OGM Royalty Interests purchased by SFI, it is again alleged that the terms of the deal were communicated to SFI by Sonnier.  (Rec. Doc. 1-1 at 7-8, § 27).  And it is again alleged that Sonnier forwarded e-mails from Melancon to SFI after Sonnier altered the original e-mails to include false representations.  (Rec. Doc. 1-1 at 8, ¶ 28).  Thus, it is alleged that Sonnier made misrepresentations by e-mail, but it is not alleged that any defendant sent an e-mail to SFI containing a misrepresentation or material omission that induced SFI to purchase an OGM Royalty Interest.

With regard to the Flip Properties, addressed in Paragraphs 43 through 58 of the petition (Rec. Doc. 1-1 at 13-17), there is not a single allegation of a misrepresentation or omission made by any specific person other than Mr. Sonnier. Instead, it is alleged that, in August 2009, "Schaffer purchased OGM Royalty Interests in this set of Flip Properties based upon the representations of Defendants" (Rec. Doc. 1-1 at 14, ¶ 45) and that, in September 2009, "Schaffer purchased OGM Royalty Interests in this set of Flip Properties based upon representations by Defendants" (Rec. Doc. 1-1 at 14, ¶ 46).  The plaintiffs do not identify any e-mails or telephone calls related to those transactions.  With regard to the purchase of a third set of Flip Properties, the plaintiffs allege that "Sonnier sent Schaffer an e-mail soliciting his purchase." (Rec. Doc. 1-1 at 14, ¶47).  Thus, there is no allegation that any specific defendant in this action made a misrepresentation or omission by e-mail or by telephone regarding the Flip Properties.  Instead, there are merely general allegations of "representation by Defendants" (Rec. Doc. 1-1 at 13, ¶ 43), allegations that "Defendants told Schaffer" (Rec. Doc. 1-1 at 14, ¶45) how his payments would be used, but no allegations satisfying the pleading requirements of Rule 9(b) or the PSLRA.

The petition alleges only three instances in which Melancon had direct contact with the plaintiffs by e-mail.  (Rec. Doc. 1-1 at 10, ¶ 32(c); Rec. Doc. 1-1 at 10, ¶ 33;

Rec. Doc. 1-1 at 12, ¶ 39).  The last of those was sent several months after the plaintiffs' final purchase, and the other two do not discuss specific OGM Royalty Interests or specific prices.  Therefore, the petition's references to these three e-mails do not satisfy the relevant pleading requirements and do not establish that they contained misrepresentations or omissions by Melancon.

In failing to identify any specific misrepresentations or omissions by anyone other than Sonnier, the plaintiffs appear to be relying upon their allegations that Sonnier was acting as the agent of the defendants or as a participant in a joint venture with the defendants when he made fraudulent statements.  The undersigned finds, however, that the petition lacks concrete factual allegations sufficient to establish the existence of either an agency relationship between Sonnier and the defendants or a joint venture among Sonnier and the defendants.  The allegations that Sonnier was the defendants' agent and the allegation that Sonnier was a joint venturer along with the defendants are too speculative to be taken as true for purposes of this motion.

There is not a single instance in the plaintiffs' lengthy and complex petition in which the plaintiffs allege that any one of the John Doe defendants individually made a misrepresentation or material omission.  Similarly, there is no statement constituting a misrepresentation or omission that is attributed to a particular person who is yet to be identified.  The undersigned therefore concludes that the plaintiffs have not stated

a valid claim, under the Securities Exchange Act of 1934, with regard to any of the John Doe defendants.

There are very few references in the petition to defendants Pinnacle Oil & Gas, LLC and Lemel Petroleum, LLC. (Rec. Doc. 1-1 at 2, ¶¶ 6-8; Rec. Doc. 1-1 at 10, ¶ 32). There is an allegation that Melancon, in an e-mail sent on August 6, 2012, referred to Pinnacle and Lemel as "my companies." (Rec. Doc. 1-1 at 10, ¶ 32). However, other than the allegations that the defendants collectively made fraudulent misrepresentations and omissions, there are no specific allegations that any particular person acting on behalf of those companies – other than Sonnier as the alleged agent of or joint venturer with those companies – made actionable misrepresentations or omissions. As noted above, the undersigned finds that the allegations that Sonnier was either the agent of or joint venturer with Pinnacle and Lemel are too speculative to be accepted as true for purposes of this motion. Accordingly, the undersigned finds that the plaintiffs have not stated claims against Pinnacle or Lemel under the Securities Exchange Act of 1934.

The undersigned finds that the allegations set forth in the plaintiffs' petition do not satisfy the pleading requirements of Rule 9(b) and the PSLRA. Accordingly, the undersigned finds that the plaintiffs have failed to state a claim arising under the

Securities Exchange Act of 1934 upon which relief can be granted by this Court.  The undersigned therefore recommends that this claim be dismissed with prejudice.

## III.   THE RULE 12(B)(7) MOTION TO DISMISS

### A.   THE STANDARD FOR ANALYZING A RULE 12(B)(7) MOTION TO DISMISS

Fed. R. Civ. P. 12(b) (7) allows dismissal for failure to join a party under Rule 19.  Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue.  It also provides for the dismissal of the suit if it should not proceed without the parties who cannot be joined.[36]

Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry.[37]  First the court must determine whether a party should be added under the requirements of Rule 19(a); then the court must determine whether litigation can be properly pursued without the absent party under Rule 19(b).[38]  The party advocating joinder has the initial burden of demonstrating that a missing party is necessary, but after an initial evaluation of the facts indicates that a

---

[36]      *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

[37]      *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009); *August v. Boyd Gaming Corp.*, 135 F. App'x 731, 732 (5th Cir. 2005).

[38]      *August v. Boyd Gaming Corp.*, 135 F. App'x at 732.

possibly necessary party is absent, the burden of disputing the initial appraisal falls on the party that opposes joinder.[39]

Under Rule 19(a)(1)(A), a party that is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if the court cannot accord complete relief among the existing parties.  Since the removing defendants did not base subject-matter jurisdiction on diversity of citizenship, Sonnier could be joined without destroying diversity.  The defendants argue that Sonnier must be added as a defendant in order for there to be a fair and complete resolution of the disputes at issue.  The plaintiffs argue to the contrary, reiterating their allegation that Sonnier was the defendants' agent and citing jurisprudence holding that Rule 19 does not require the joinder of a principal and his agent.

While the plaintiffs are correct that both principal and agent need not always be joined in the litigation,[40] that argument lacks applicability to the present situation. The cases holding that both principal and agent need not be joined are guided by the principle that one or the other may be held liable for the whole of the plaintiff's

---

[39]     *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d at 628; *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 2006).

[40]     See, e.g., *Nottingham v. General Am. Communications Corp.*, 811 F.2d 873, 880 (5th Cir. 1987).

claimed recovery.  In this case, however, whether Sonnier was the agent of the defendants is a disputed issue that has not yet been resolved.  If it is ultimately determined that Sonnier was not the agent of one or more of the defendants, then it is conceivable that he could be independently liable to the plaintiffs regardless of the liability of any of the defendants.  Therefore, the court would not be able to accord complete relief if Sonnier is not made a defendant in this action.  But Rule 19(a)(1) does not require the joinder of every person who might potentially be liable to the plaintiff in a lawsuit.  Instead, it requires a determination of whether the court can, in the absence of the party sought to be joined, "accord complete relief among *existing* parties."[41]  In this case, the court is capable of determining whether the defendants are liable to the plaintiffs regardless of whether Sonnier was acting at relevant times as the agent of one or more of the defendants and regardless of whether Sonnier is added as a defendant in the lawsuit.  It is the plaintiffs who may not be able to recover all of their alleged losses if Sonnier is not joined as a defendant, but a plaintiff is generally considered to be the master of his complaint and these plaintiffs have asserted claims against Sonnier in another forum.  Accordingly, the undersigned is persuaded that it is not necessary to find that Sonnier is an indispensable party or to order that the lawsuit be dismissed because Sonnier has not been made a party.  The

---

[41]     Fed. R. Civ. P. 12(a)(1)(A) (emphasis added).

-21-

undersigned recommends that the defendants' motion to dismiss under Rule 12(b)(7) be denied.

## CONCLUSION

For the reasons set forth above, it is recommended:

(a)  that the plaintiffs be ordered to amend their complaint to allege the number of potential purchasers to whom each OGM Royalty Interest was offered in addition to the plaintiffs, and if that number is less than thirty-five, it is recommended that the plaintiffs' Rule 12(b)(6) motion be granted with regard to the plaintiffs' claim alleging a violation of the Securities Exchange Act of 1933 and that claim be dismissed with prejudice;

(b)  that the plaintiffs' Rule 12(b)(6) motion be granted with regard to the plaintiffs' claim arising under the Securities Exchange Act of 1934 and that claim be dismissed with prejudice; and

(c)  that the defendants' motion to dismiss for failure to join a required party be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on July 31, 2015.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE